MINORITY POLICE OFFICERS ASSOCIATION OF SOUTH BEND, on behalf of its members and all others similarly situated, James Earl Clark, Jr., individually and on behalf of all others similarly situated, John Floyd, individually and on behalf of all others similarly situated, Frank Murphy, individually and on behalf of all others similarly situated, John Williams, individually and on behalf of all others similarly situated, Shirley Woods, individually and on behalf of all others similarly situated, Lynn Coleman, individually and on behalf of all others similarly situated, Armando Garcia, individually and on behalf of all others similarly situated, Norval Williams, individually and on behalf of all others similarly situated, Hiram Bonds, individually and on behalf of all others similarly situated, Austin Davis, individually and on behalf of all others similarly situated, Curtis Walton, individually and on behalf of all others similarly situated, Plaintiffs,

v.

CITY OF SOUTH BEND, INDIANA, a municipal corporation, Roger O. Parent, individually and as the Mayor, City of South Bend, Indiana, Board of Public Safety, South Bend, Indiana, and its Members, Charles W. Roemer, individually and as the President of the Board of Public Safety, City of South Bend, Indiana, Elmer Carr, individually and as a member of the Board of Public Safety, City of South Bend, Indiana, Stanley Przybylski, individually and as a member of the Board of Public Safety, City of South Bend, Indiana, and, Dan D. Thompson, individually and as Chief of Police, City of South Bend, Indiana Police Department, Defendants.

No. S 81-402.

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 31, 1983.

Charles F. Crutchfield, South Bend, Ind., for plaintiffs.

Richard L. Hill, City Atty., Robert C. Rosenfeld, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

SHARP, Chief Judge.

Plaintiffs filed this action seeking relief for alleged discriminatory practices and policies by defendants in hiring, promotion, placement, recruitment and other conditions of employment at the South Bend Police Department pursuant to 42 U.S.C. §§ 1981 and 1983. Plaintiffs allege violations of the Ninth and Fourteenth Amendment to the Constitution of the United States and seek to maintain this case as a class action. Both parties have filed motions for summary judgment, fully briefed the issues and oral argument was heard on September 30, 1982.

### I.

Plaintiffs seek to maintain this case as a class action under Rule 23 of the Federal Rules of Civil Procedure and requested the Court to certify a class of all Black and Spanish Americans who are presently employed, have been employed, sought em-

ployment or may seek employment with the South Bend Police Department. The Supreme Court of the United States has stated that "suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs". *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). The *Rodriguez* Court noted also, however, that careful attention to the requirements of Federal Rule of Civil Procedure 23 remained indispensable. *Id.* Therefore, in order for the case presently before the Court to proceed as a class action, each of the requirements of Rule 23 must be met. See, *Patterson v. General Motors Corporation,* 631 F.2d 476, 480 (7th Cir.1980).

Rule 23 of the Federal Rules of Civil Procedure clearly outline the prerequisites to a class action:

> (a) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

 The plaintiffs, as the party seeking certification in this case, have the burden of establishing their rights to proceed as a class action. See, *Cook County College Teachers Union, Local 1600, AFT v. Byrd,* 456 F.2d 882, 885 (7th Cir.1972), *cert. den.,* 409 U.S. 848, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972). Specific facts must be alleged sufficient to meet the requirements of the rule as mere repetition of the rule or loosely defined classwide allegations are insufficient. See, *e.g., Patterson v. General Motors Corporation, supra; Hauck v. Xerox Corp.,* 78 F.R.D. 375, 377 (E.D.Pa.1978); *Pittman v. Anaconda Wire and Cable Co.,* 408 F.Supp. 286, 295 (E.D.N.C.1976). As the following discussion will show, plaintiffs' action does not meet the requirements of Rule 23(a).

The first requirement of Rule 23(a) is that the class the plaintiffs purport to represent is so numerous that joinder of all members would be impracticable. Fed.R. Civ.Proc. 23(a)(1). In plaintiffs' amended complaint, they merely recite the rule as to numerosity without giving any facts to support the allegation. The record indicates that there are 20 Black police officers and one Spanish surnamed American employed by the South Bend Police Department. In answer to Interrogatory number 1 of the interrogatories propounded by defendants to plaintiff, Minority Police Officers Association of South Bend (Association), the Association stated that there are 22 members in the Association. The record further indicates that there are approximately four past minority police officers that could be included in the class as urged by the plaintiff. Thus, the number of past and present minority police officers at the South Bend Police Department could not be more than 26 total and that number is clearly insufficient to fulfill the numerosity requirement.

 In addition to past and present minority police officers, plaintiffs seek to include in the class all future minority police officers and all minority persons who have sought or will seek employment with the South Bend Police Department. All of the named plaintiffs are presently employed by the South Bend Police Department. None of them have sought employment and been denied employment on the basis of their race. With regard to all future members and future applicants for positions with the South Bend Police Department, their only claim would be for a threatened violation of a constitutional right. This Court has no jurisdiction over a claim of a threatened violation of a constitutional right because it fails to satisfy the "case or controversy" requirement of Article III of the Constitution of the United States. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Doe v. Koger,* 480 F.Supp. 225 (N.D.Ind.1979). Thus, as the

claims of the future members and future applicants of the South Bend Police Department cannot be litigated in this case and the number of past and present minority members of the South Bend Police Department is insufficient to fulfill the numerosity requirement of Rule 23, plaintiffs' request for an order certifying a class must be denied.

■ Plaintiffs have also failed to adequately demonstrate that there are questions of law or fact common to the class. The focus of plaintiffs' amended complaint and discovery filed with this Court concern questions of promotion and practices as they have affected the named plaintiffs in this case. No hiring or recruitment claim has been raised personally by any of the named plaintiffs or by the Minority Police Officers Association as that claim affects none of its members. Further, any issue which could be raised regarding discrimination in promotion as to a named plaintiff or current member of the Association would not be typical of or common to previous applicants. Nor have any specific factual allegations been made or evidence adduced with regard either to discrimination in hiring or promotion against any specific previous minority police officer. The Supreme Court has held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members," *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), quoting *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974). Thus, since the named plaintiffs in this case do not possess the same interests or suffer the same injury as past members or future applicants with the South Bend Police Department, cf. *General Telephone Co. of Southwest v. Falcon,* — U.S. —, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2) of the Federal Rules of Civil Procedure and a class cannot be certified.

■ Finally, the plaintiffs have failed to show that they will fairly and adequately protect the interests of the class. First, they failed to move for class certification promptly, if at all. A careful review of the record reveals no motion for class certification has ever been filed with this Court. Even assuming that this Court has an obligation on its own motion to determine whether an action shall proceed as a class action, the named plaintiffs' failure to protect the interests of class members by moving for certification bears strongly on the adequacy of the representation that those class members might expect to receive. See, *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977). Further, the allegations in the complaint as well as the major thrust of discovery focused on the issues of promotions in the South Bend Police Department, and not on hiring and recruitment claims. Thus, the record indicates that plaintiffs would not fairly and adequately protect the interests of the proposed class as required by Rule 23.

For the foregoing reasons, plaintiffs' request for an order certifying a class is hereby DENIED.

## II.

The defendants filed a Motion to Dismiss this action on January 8, 1982 for failure to state a claim upon which relief can be granted. Defendants specifically argued that the Ninth Amendment to the Constitution of the United States is not available as a cause of action for alleged racial discrimination in employment and that plaintiffs' complaint fails to allege facts or statistics sufficient to state a cause of action under 42 U.S.C. § 1981 or § 1983 for intentional discrimination. Defendants also argued that plaintiffs lacked standing to invoke the court's jurisdiction for the alleged discriminatory hiring practices of defendants. On January 19, 1982, the plaintiffs filed an amended complaint. On February 16, 1982, defendants renewed their Motion to Dismiss, again arguing that plaintiffs have failed to state a claim for discrimination in

recruitment and hiring and also sought to apply a two year statute of limitations to plaintiffs' employment discrimination claims under 42 U.S.C. §§ 1981 and 1983. On February 19, 1982, the Court converted defendants' Motion to Dismiss to a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and gave the parties time to file additional supporting material and briefs. On April 1, 1982, plaintiffs filed an Amended Complaint adding additional plaintiffs. On May 5, 1982, plaintiffs filed a Cross-Motion for Summary Judgment on the merits of the case. Upon review of the entire record in this case, the Court finds four issues remaining before the Court on defendants' Motion for Summary Judgment and plaintiffs' Motion for Summary Judgment.

### A. Statute of Limitations

Defendants argue that a two year statute of limitations should be applied to plaintiffs' claims under 42 U.S.C. § 1981 citing *Movement for Opportunity and Equality v. General Motors Corp.,* 622 F.2d 1235 (7th Cir.1980), and to plaintiffs' claims under 42 U.S.C. § 1983 citing *Hill v. Trustees of Indiana University,* 537 F.2d 248 (7th Cir.1976). Plaintiffs' counsel essentially argues that the Court of Appeals made a mistake in *Movement for Opportunity and Equality v. General Motors Corp., supra.* He urges this Court to correct that alleged mistake in this case. It is not the proper province of this Court to correct the mistakes of the Court of Appeals. It is rather the obligation of this Court to follow and sometimes perpetuate those mistakes. Accordingly, this Court will apply a two year statute of limitations to this case on all claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1983 and will not consider any claims for alleged discrimination occurring prior to November 23, 1979.

### B. Ninth Amendment

Plaintiffs alleged in their amended complaint violations of the Ninth and Fourteenth Amendments to the Constitution of the United States. Defendants have moved for Summary Judgment on plaintiffs claims under the Ninth Amendment on the grounds that plaintiffs have failed to state a claim in that no cause of action exists under the Ninth Amendment in employment discrimination cases.

Plaintiffs' amended complaint with regard to their Ninth Amendment claim states as follows:

"40. Defendants have purposely and intentionally discriminated against Plaintiffs and members of their class by violation of the Ninth Amendment to the Constitution of the United States which provides: 'The enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people.'"

A careful and thorough review of the record indicates the only arguments presented by plaintiffs in support of their claims under the Ninth Amendment are contained in Plaintiffs' Memorandum in Support of their Motion for a Preliminary Injunction. The plaintiffs essentially argue that *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), can be read as construing the Ninth Amendment to the Constitution of the United States as "a repository of unadulterated freedom and liberty in which everyone (people and states) are required to act in a way or fashion that maximizes not minimizes all citizens' liberties." Then, based on that reading of *Griswold,* plaintiffs argue that the promotion system used by the South Bend Police Department perpetuates past discriminatory practices which deprives them of freedom and liberty guaranteed by the Ninth Amendment. This Court finds plaintiffs' argument with regard to their Ninth Amendment claims unpersuasive.

First, even the most expansive reading of *Griswold v. Connecticut* does not support plaintiffs' argument. The Court in *Griswold* recognized "that specific guarantees in the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance," 381 U.S. 484, 85 S.Ct. at 1681, and found the marital right to privacy to be within the zone of

privacy created by several fundamental constitutional guarantees. In discussing the source of the fundamental right to privacy, the *Griswold* Court cited several amendments, explaining the portion of the Amendment related to the right to privacy and then merely quoted the Ninth Amendment. A very liberal reading of that opinion as it relates to the Ninth Amendment might support an argument that the Ninth Amendment could raise the right to privacy to a fundamental level without reference to the other amendments or their penumbras but can in no way be read or interpreted to support plaintiffs' argument in the case presently before the Court. Nor can this Court find support for plaintiffs' position in Justice Goldberg's concurrence in *Griswold.* In fact, the language of the concurrence indicates the opposite.

The Supreme Court has held in a series of decisions that the Fourteenth Amendment absorbs and applies to the states those specifics of the first eight amendments which express fundamental personal rights. See, *e.g., Griswold v. Connecticut, supra; Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962); *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); *Cantwell v. Connecticut,* 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). This Court has not found, after lengthy and careful research, any case which holds that the Ninth Amendment is applicable to the States through the Fourteenth Amendment. Rather, Justice Goldberg's opinion in *Griswold v. Connecticut* indicates the contrary. After discussing the history and meaning of the Ninth Amendment, Justice Goldberg states:

> "I do not take the position of my Brother Black in his dissent in *Adamson v. California,* 332 U.S. 46, 68, [67 S.Ct. 1672, 1683, 91 L.Ed. 1903] that the entire Bill of Rights is incorporated in the Fourteenth Amendment, and I do not mean to imply that the Ninth Amendment is applied against the States by the Fourteenth Amendment. Nor do I mean to state that the Ninth Amendment constitutes an independent source of rights protected from infringement by either the States or the Federal Government. Rather, the Ninth Amendment shows a belief of the Constitution's authors that fundamental rights exist that are not expressly enumerated in the first eight amendments and an intent that the list of rights included there not be deemed exhaustive.

> \* \* \* \* \* \*

> "Nor am I turning somersaults with history in arguing that the Ninth Amendment is relevant in a case dealing with a *State's* infringement of a fundamental right. While the Ninth Amendment— and indeed the entire Bill of Rights— originally concerned restrictions upon *federal* power, the subsequently enacted Fourteenth Amendment prohibits the States as well from abridging fundamental personal liberties. And, the Ninth Amendment, in indicating that not all such liberties are specifically mentioned in the first eight amendments, is surely relevant in showing the existence of other fundamental personal rights, now protected from state, as well as federal infringement. In sum, the Ninth Amendment simply lends strong support to the view that 'liberty' protected by the Fifth and Fourteenth Amendments from infringement by the Federal Government or the States is not restricted to rights specifically mentioned in the first eight amendments."

381 U.S. at 492–93, 85 S.Ct. at 1686. The foregoing excerpt from *Griswold* clearly indicates that the Ninth Amendment is not applicable to the States through the Fourteenth Amendment and thus cannot be the basis of a claim against the defendants in the case presently before the Court.

Second, plaintiffs have failed to specify what unenumerated constitutional right forms the basis of their Ninth Amendment

claim. Plaintiffs' amended complaint appears to indicate alleged violations of the Equal Protection clause of the Fourteenth Amendment but does not indicate what other, if any, "liberty" interests have allegedly been violated under the foregoing analysis, any such alleged violations of "freedom and liberty" interests that rise to the level of fundamental constitutional guarantees could be raised under the Fourteenth Amendment.

For the foregoing reasons, plaintiffs' claims based on alleged Ninth Amendment rights must fail because there are no specific constitutional rights secured by that Amendment. Accordingly, plaintiffs' Motion for Summary Judgment as to the Ninth Amendment claims is GRANTED.

### C. Standing to Raise Hiring Issues

■ Plaintiffs alleged in their amended complaint that the South Bend Police Department has been guilty of discrimination based on race in the hiring of police officers. Defendants have moved for summary judgment as to the hiring claims on the ground that the plaintiffs lack standing to raise that issue. For purposes of ruling on a motion for summary judgment seeking dismissal of certain claims for lack of standing, this Court must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party. *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); *Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969); *Jones v. Blinziner,* 536 F.Supp. 1181, 1191 (N.D.Ind.1982).

■ The Constitution of the United States limits federal court jurisdiction to actual cases or controversies, U.S. Const. Art. III, § 2, and thus precludes federal courts from rendering advisory opinions or deciding questions that cannot affect the rights of the litigants in the case before them. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975). Part of that constitutional limitation, particularly applicable in the second preclusion noted above, is the concept of

standing. See, *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 1923, 48 L.Ed.2d 450 (1976). The essence of the standing doctrine is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his or her invocation of federal court jurisdiction and to justify the exercise of the court's remedial powers on his or her behalf. *Warth v. Seldin, supra; Simon v. Eastern Ky. Welfare Rights Org., supra; Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *International Union, Etc. v. Johnson,* 674 F.2d 1195, 1198 (7th Cir.1982). The focus of the inquiry therefore is on the party seeking to have the court decide the merits of the dispute or particular issues and not on the issues he wishes to have adjudicated. See, e.g., *Gladstone, Realtors, v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979); *Warth v. Seldin,* 422 U.S. at 498, 95 S.Ct. at 2204; *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); see also, *Larson v. Valente,* 456 U.S. 228, 238, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982); *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978); *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

■ The required inquiry when the issue of standing is raised involves both constitutional limitations on federal court jurisdiction and prudential limitations on its exercise. *Warth v. Seldin, supra; Barrows v. Jackson,* 346 U.S. 249, 255–56, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953). Both dimensions are founded in the concern about the proper role of the courts in a democratic society. See, *Warth v. Seldin, supra; Schlesinger v. Reservists to Stop the War,* 418 U.S. 208, 221–227, 94 S.Ct. 2925, 2932–35, 41 L.Ed.2d 706 (1974).

■ The constitutional limitation relating to standing is found in Article III, Section 2 of the Constitution of the United States which concerns justiciability of the claim. The inquiry for this dimension is "whether the plaintiff has made out a 'case

or controversy' between himself and the defendant within the meaning of Article III." *Warth v. Seldin, supra,* 422 U.S. at 498 499, 95 S.Ct. at 2205; see, *Valley Forge Christian College v. Americans United For Separation of Church and State,* 454 U.S. 464, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Ky. Welfare Rights Org., supra,* 426 U.S. at 41, 96 S.Ct. at 1925; *International Union, Etc. v. Johnson, supra,* at 1198; *Jones v. Blinzinger, supra,* at 1191. To determine whether a plaintiff has alleged a sufficient personal stake in the outcome of a case to confer jurisdiction, the court must inquire whether the plaintiff has shown that he or she has personally suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and a fairly traceable causal connection between the claimed injury and the challenged conduct. *Valley Forge Christian College v. Americans United For Separation of Church and State, supra,* 102 S.Ct. at 758; *Gladstone, Realtors, v. Village of Bellwood, supra,* 441 U.S. at 99, 99 S.Ct. at 1607; *Duke Power Co. v. Carolina Environmental Study Group, Inc., supra; Warth v. Seldin, supra; R.S. v. D.,* 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973); see, *Association of Data Processing Service Org., Inc., v. Camp,* 397 U.S. 150, 151–154, 90 S.Ct. 827, 829–30, 25 L.Ed.2d 184 (1970). Otherwise, the exercise of federal jurisdiction "would be gratuitous and thus inconsistent with the Art. III limitation." *Gladstone, Realtors, v. Village of Bellwood, supra,* 441 U.S. at 99, 99 S.Ct. at 1607, quoting *Simon v. Eastern Kentucky Welfare Rts. Org., supra,* 426 U.S. at 38, 96 S.Ct. at 1924.

█ Even if a plaintiff has alleged sufficient facts to bring the case within the constitutional limitations of the standing doctrine, a plaintiff may still lack standing under the prudential principles of the doctrine by which "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone, Realtors, v. Village of Bellwood, supra,* 441 U.S. at 99, 99 S.Ct. at 1607. Thus, the prudential characteristic requires that a plaintiff generally assert his or her own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties. *Warth v. Seldin, supra; Tileston v. Ullman,* 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); *Jones v. Blinziner, supra,* at 1192.

█ In the case presently before the Court, the plaintiffs alleged that the defendants have engaged in hiring and recruitment practices that discriminate against Black and Spanish-surnamed applicants for the South Bend Police Department. All of the individual named plaintiffs in this case are employed by the South Bend Police Department. None of them were denied employment because of their race and thus have not shown that they have suffered actual or threatened injury personally on the hiring issues. The named plaintiffs are attempting to assert the legal rights or interests of third parties and do not have an actual personal stake in the outcome of the hiring issues. Accordingly, the named plaintiffs do not have standing to maintain the recruitment and hiring claims alleged in the complaint.

█ Nor does the Minority Police Officers Association have standing to raise the hiring claim. The standing of an organization is derivative of its members' standing. *Rockford League of Women Voters v. United States Nuclear Regulatory Commission,* 679 F.2d 1218, 1221 (7th Cir. 1982); see, *Sierra Club v. Morton,* 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). Therefore, as none of the named individual plaintiffs, who constitute the membership of the Minority Police Officers Association, have standing, the Association does not have standing either.

For the above reasons, defendants' Motion for Summary Judgment as to the hiring issues is GRANTED and plaintiffs' claims based on discriminatory hiring practices are dismissed.

### D. *Intentional Discrimination*

Defendants' Motion for Summary Judgment also requests that all claims that are not based on intentional discrimination should be dismissed. In plaintiffs' amended complaint, all claims for relief are based on purposeful and intentional discrimination. See, *General Building Contractors Ass'n v. Pennsylvania et al,* —— U.S. ——, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). Accordingly, defendants' request is moot and the motion for summary judgment as to those issues is DENIED.

SO ORDERED.