**MINORITY POLICE OFFICERS ASSOCIATION OF SOUTH BEND, on behalf of its members and all others similarly situated, et al., Plaintiffs-Appellants,**

v.

**CITY OF SOUTH BEND, INDIANA, a municipal corporation, et al., Defendants-Appellees.**

No. 85–2778.

United States Court of Appeals, Seventh Circuit.

Argued April 14, 1986.

Decided Sept. 18, 1986.

Charles F. Crutchfield, San Antonio, Tex., for plaintiffs-appellants.

Robert C. Rosenfeld, City Atty., South Bend, Ind., for defendants-appellees.

Before POSNER and FLAUM, Circuit Judges, and MAROVITZ, Senior District Judge.*

FLAUM, Circuit Judge.

## I.

The plaintiffs are several black police officers of the City of South Bend, Indiana. The defendants are the City of South Bend and various municipal officials. On November 23, 1981 the plaintiffs brought a complaint in the United States District Court for the Northern District of Indiana alleging that the defendants had discriminated against them on the basis of their race in violation of the Ninth and Fourteenth Amendments to the United States Constitution and Sections 1981 and 1983 of the United States Code. Two plaintiffs filed a separate action on November 17, 1983 alleging a violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e et seq. (1983). The district court consolidated the two actions. On January 31, 1983 the plaintiffs' Ninth Amendment claims, as well as their claims based on the hiring and recruitment policies of the police department, were dismissed. *Minority Police Officers Association v. City of South Bend*, 555 F.Supp. 921 (N.D.Ind.1983), *aff'd in part*, 721 F.2d 197 (7th Cir.1983).[1] The remaining issues were tried before the district judge in June of 1985. In September of 1985 the district court ruled that the plaintiffs had failed to prove that they were entitled to relief on any of their remaining claims, 617 F.Supp. 1330. The plaintiffs have appealed. We affirm.

## II.

On appeal the appellants' primary contention is that the promotion policies of the South Bend Police Department unlawfully discriminated against them on the basis of race. At the time of the filing of the complaint there were 246 officers in the department. Twenty-two officers were black and one was Hispanic. There was one black division chief, one black lieutenant, five black sergeants, eleven black corporals, and four black patrolmen.[2] By November of 1981 there were eleven black corporals who had been with the department long enough to be eligible for promotion to sergeant. Only two were promoted. From 1979 to 1982 fourteen whites were promoted to lieutenant and six were promoted to captain, but only one black was promoted to lieutenant. On November 10, 1981 the South Bend Police Department made a number of promotions pursuant to

---

\* The Honorable Abraham Lincoln Marovitz, Senior District Judge for the Northern District of Illinois, Eastern Division, is sitting by designation.

1. These dismissals are not subjects of this appeal. This court held that the district court's rulings on class certification and the statute of limitations were not final orders.

2. On May 1, 1985 there were 229 officers in the department. Thirty were black. Nine of the black officers were patrolmen, sixteen were corporals, two were sergeants, two were lieutenants and one was an acting captain.

an "in house" promotion plan implemented in 1981.[3] It is these promotions that led to the filing of this suit.

The "in house" promotion plan is a three-step promotion process adopted by the city in 1981 featuring: (1) a performance evaluation; (2) an oral interview; and (3) a final decision by the Chief of Police. None of the plaintiffs ever got beyond the performance evaluation. During the performance evaluation police officers were rated on the quality of their work, judgment and common sense, initiative, knowledge of duties, safety consciousness and equipment care, appearance, attitude and dependability. The plaintiffs do *not* allege that the criteria employed in their performance evaluation were not job-related. Instead, they allege the racially-motivated "subjective use" of those criteria by white supervisors. Appellants' Brief at 5.

The performance evaluation element of the promotion plan was developed in 1980 and 1981 by a committee of police officers and a representative of the City's Board of Public Safety. Two black officers, including one of the plaintiffs, were members of the committee. Neither officer voiced concerns about the fairness of the promotion procedures at that time. Only performance evaluations made in August of 1981 were employed in the promotion decisions made in October and November of 1981. Sergeant Williams and Lieutenant Kyle, both of whom are black, participated in the August evaluations as evaluators. Rated officers had access to their own performance evaluations and a grievance procedure was available.

The South Bend Police Department Duty Manual contains the following provisions:

308.00 *PLEDGE AGAINST DISCRIMINATION AND COERCION*

"It is the policy of the City of South Bend, Indiana to provide equal opportunity in employment without regard to race, religion, color, national origin, physical handicap, age, or sex. Employment actions and activities include, but are not limited to hiring, discharging, classifying, transferring, promotion or upgrading, determining pay raises, eligibility for participation in the staff benefit program, training and re-training, assigning work tasks, tools, equipment and space. The City continuously promotes this policy through a program of positive action affecting all organizational units which are managed by, or affiliated with the City of South Bend, Indiana. Through this program the City carries out the requirements of federal executive orders, Numbers 11246 and 11375 of the Civil Rights Act of 1964, and the Equal Employment Act of 1972, and all other applicable laws, and indicates its active support of the principle of equal opportunity in employment." (City of South Bend Equal Employee Opportunity Policy.)

In September of 1981 the performance evaluation scores were ranked. Those officers scoring in the top ten percent moved on to the oral interview stage of the promotion process. Oral interviews were conducted by panels of three superior officers. Each panel member asked the same question of each candidate. The oral interview panels submitted the names of the top three candidates for each position to the Chief of Police who, in turn, submitted the candidates' names to the Board of Public Safety for final approval. Every black who made it through the performance evaluation also made it through the oral interview. Chief of Police Thompson recommended for promotion every black officer whose name was submitted to him.

III.

The Equal Protection clause of the Fourteenth Amendment is violated only if the defendants have acted with a discriminatory purpose or intent. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–65, 97 S.Ct. 555, 562–63, 50 L.Ed.2d 450 (1977). This discriminatory purpose or intent may be es-

---

3. The "in house" promotion plan was the Department's response to an Indiana state court ruling that a previous promotion was null and void.

tablished by proof of the systematic exclusion of persons because of race or the unequal application of a law, policy or system. 42 U.S.C. § 1981, upon which the plaintiffs rely, also includes a discriminatory intent requirement. *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982). Two of the plaintiffs have filed claims under Title VII; they need only establish that the employment policies of the South Bend Police Department have a disparate impact upon blacks. *Teamsters v. United States,* 431 U.S. 324, 335–36, 97 S.Ct. 1843, 1854–55, 52 L.Ed.2d 396 (1977). The district court's findings shall not be reversed unless clearly erroneous. *Anderson v. City of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).[4]

We confess to being somewhat perplexed by the plaintiffs' claims that the "in house" promotion plan evidences an intent to discriminate against them on the basis of race. Perhaps the least convincing case is that of plaintiff Norval Williams, who was rated by Captain Bennett and Lieutenant Kyle. Lieutenant Kyle is black. Williams concedes that Kyle's rating was fair. While Kyle's rating of Williams was somewhat higher than Bennett's, both officers rated Williams fifth of the five sergeants they saw. Even if Kyle's rating had been the only rating given, Williams still would not have rated in the top ten percent of candidates and advanced to the oral interview stage.

The remaining plaintiffs' claims are not so obviously self-contradictory. Nevertheless, the claims of the remaining plaintiffs, while remarkably similar to one another, also do not support a claim of intentional discrimination. In each case the plaintiffs were denied promotion. In each case the

alleged reason for the denial was the general prejudice of white officers against black applicants. No plaintiff has been able to point to a single instance in which one of the officers evaluating them had evidenced racial animosity towards them personally.[5] Instead, the plaintiffs allege that the white officers rating them could not, as a matter of federal law, have been rating them fairly because whites, as a group, are inherently incapable of rating blacks fairly. We doubt that the proposition is true as a matter of fact, and we are certain that it is false as a matter of law. The laws of our nation do not incorporate such a bleak vision of relations between the races. We have previously stated that conclusory allegations of generalized racial bias do not establish discriminatory intent. *Mason v. Continental Illinois National Bank,* 704 F.2d 361, 367 (7th Cir.1983). In any event there is, on this record, no basis for holding that the district court's rulings were clearly erroneous.

It would be pointless to review the trial court's specific findings regarding each plaintiff's individual claim. The district court evaluated the testimony of each of the plaintiffs and in no case was it convinced that the plaintiffs had established an insidious motivation for the ratings given during the August evaluations. We see no reason to disturb the thoughtful and thorough findings of the district judge.

The two plaintiffs who raised Title VII claims in the district court stand in a somewhat different position, for, as we have indicated, discriminatory intent is a much less important factor in Title VII cases. Nevertheless, "the plaintiff always has the burden of persuasion with respect to discrimination." *Coates v. Johnson & Johnson,* 756 F.2d 524, 532 (7th Cir.1985). "[A]ny Title VII plaintiff must carry the

---

**4.** The plaintiffs' section 1983 claims were also dismissed by the district court and they do not press those claims on appeal.

**5.** Plaintiff Austin Davis did testify that Sergeant Halasz, one of the officers who evaluated him,

had on several occasions directed racially derogatory language at him. The district court did not find Davis' testimony credible. *Memorandum Opinion* at 25.

initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act." *Teamsters v. United States*, 431 U.S. at 358, 97 S.Ct. at 1866. Plaintiffs have simply failed to meet their burden. The mere fact that an employer fails to promote all black employees, while promoting some white and some black employees, does not create an inference of discriminatory purpose.[6]

### IV.

What is regrettable about this lawsuit is not that it was dismissed, but that it was thought necessary to be brought. That honest disappointment with the denial of a promotion could be viewed as an occasion for a civil rights lawsuit is imaginable only in an environment of profound racial mistrust. Unfortunately, certain black police officers of South Bend believe they have reason to mistrust their white brethren. The plaintiffs testified to numerous "racial" incidents. The resulting racial tensions may well affect the Department's ability to provide protection to the citizens of South Bend. It is not our place, however, to advise the South Bend Police Department as to the best way to conduct race relations among its officers. The civil rights laws of this country do not require us to decide whether the South Bend Police Department is an inviting place for blacks to work, but rather whether the department is operated in such a manner so as to effectively deprive blacks of their right to pursue the employment of their choice. The plaintiffs have not demonstrated that the department is so operated and it is for this reason that the decision of the district court is

AFFIRMED.

**6.** Plaintiffs continue to press their claims that the defendants discriminated against them in training and assignment practices. We find nothing in the record to indicate that the district court's findings that plaintiffs had failed to raise

even an inference of discriminatory intent in these areas is clearly erroneous. *See generally Anderson v. City of Bessemer*, 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).