**Pamela J. BURKS, Plaintiff,**

v.

**WISCONSIN DEPARTMENT OF TRANSPORTATION, Marcia L. Traska and Mary P. Forlenza, Defendants.**

**No. 04–C–503–C.**

United States District Court,
W.D. Wisconsin.

May 11, 2005.

David E. Lasker, for Plaintiff.

Michael J. Losse, Madison, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is the second suit that plaintiff Pamela J. Burks has brought in this court. In 2001, she sued her former employer, the Wisconsin Department of Health and Family Services, for race discrimination and retaliation. *Burks–Ramnarine v. Wisconsin Dept. of Health and Family Services,* Case No. 00–C–535–S (W.D.Wis. 2001). Now, she is suing a more recent employer, defendant Wisconsin Department of Transportation, for retaliation, racial discrimination and creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and for discriminating against her and creating a hostile work environment in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). In addition, plaintiff is suing

defendants Marcia L. Traska and Mary P. Forlenza under 42 U.S.C. §§ 1981 and 1983 for racial discrimination in violation of her constitutional right to equal protection for retaliation in violation of the First Amendment and for depriving her of due process rights. Jurisdiction is present. 28 U.S.C. § 1331.

For plaintiff, this case boils down to a lack of evidence. She has not proposed facts that would allow a jury to draw a reasonable inference that defendants terminated her for an impermissible reason or stigmatized or mistreated her in any way. Therefore, I must grant defendants' motion for summary judgment in its entirety.

From the parties' proposed findings of fact and the record, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Pamela J. Burks is of African–American and Hispanic descent. She worked for the Bureau of Transit and Local Roads, Local Transportation Programs and Finance Section (Bureau of Transit) of defendant Wisconsin Department of Transportation, a state agency with its primary office located in Madison, Wisconsin. Plaintiff suffers from permanent hearing impairment, sight impairment and shoulder, neck and spinal cord injuries as a result of an automobile accident on December 5, 1984. These disabilities make it difficult for plaintiff to walk, sit or stand for any extended period of time. At all relevant times defendant Marcia L. Traska was employed by defendant Wisconsin Department of Transportation as a Unit Supervisor in the Bureau of Transit. Traska was plaintiff's immediate supervisor from November 2001 to August 2002. As Unit Supervisor, Traska was responsible for general supervision of staff and administration of the Local Roads Improvement Program, General Transportation Aides,

Connecting Highways, Flood Damage Aids, Expressway Aids, County Forest Road Aids and Lift Bridge Aids. Defendant Mary P. Forlenza is a Planning and Analysis Administrator of the Division of Transportation Investment Management at defendant Department of Transportation. Forlenza is responsible for overseeing a ten-person section that provides over $500 million annually in state and federal funds to communities throughout Wisconsin. Forlenza was Traska's supervisor and plaintiff's second line supervisor.

On October 31, 2001, defendant Traska interviewed plaintiff for a programming and planning analyst–4 position in the Bureau of Transit. Defendants Traska and Forlenza considered plaintiff the most highly qualified applicant for the position and they selected her to fill the vacancy. In a written offer dated November 6, 2001, defendant Forlenza advised plaintiff of the Department of Transportation's policy of providing reasonable accommodation, along with the employee's responsibility to contact their supervisor or the department's affirmative action office if the employee requires an accommodation. On November 19, 2001, plaintiff was appointed to the position of Program Manager of the Bureau of Transit and Local Roads (program and planning analyst–4) by defendant Department of Transportation in its Division of Transportation Investment Management. Defendants employed her on a probationary basis. Plaintiff's co-workers included Maria Cole, a program and planning analyst and Wendy Brigham–Abrouq, an information systems data services worker and former program and planning analyst.

Shortly after defendants hired plaintiff, they presented her with a set of three-month goals. On February 19, 2002, they conducted a three-month probation review of plaintiff's progress on her three-month

goals and determined that her work was satisfactory.

On May 2, 2002, plaintiff told defendant Forlenza that she was experiencing difficulty with the repetitive task of clipping documents together. In response, Forlenza sent plaintiff an email summarizing their conversation and suggesting alternatives to help resolve her difficulties. In addition, Forlenza asked plaintiff to inform defendant Traska immediately if the suggestions did not meet her needs. On May 7, 2002, plaintiff provided Forlenza with medical documentation that was two years old. Forlenza told plaintiff that the department could not make any decisions about medical accommodations until she submitted current information about her disabilities. On May 14, 2002, plaintiff provided Forlenza with medical documentation with a more recent doctor signature and date, stating that she required large grip writing utensils, a workspace with reduced lighting, an amplified telephone, no bright-colored paper and red, blue and green pens.

On May 15, 2002, defendants Traska and Forlenza met with plaintiff and provided her with a six-month probationary performance evaluation, a copy of which had been provided to plaintiff for review prior to the meeting. The evaluation stated:

> Pam's performance over the past three months (mid Feb to mid May) has been uneven and unpredictable—both within the work area, and on several occasions, with local officials. It is recognized this is a very busy time in the LRIP program cycle, but the inconsistent quality of her work and accompanying attitude are not acceptable. She tends to blame others for all mistakes—the unit leader/supervisor, section chief, her fellow program manager, and the LTE who assists in mailing program documents. Most recently, however, it appears Pam is moving in the right direction, and

> beginning to take more initiative, responsibility and accountability for her work. Therefore, Pam's probation is being extended for three months, during which her performance and ability will be monitored weekly by the unit supervisor.

Plaintiff never disclosed her notes to defendant Traska or offered to do so, even though Traska asked to see them. Plaintiff did not take notes in the manner that defendants Traska and Forlenza preferred.

Also on May 15, 2002, Department of Transportation Safety and Ergonomics Specialist Ruth Ann Whitehorse conducted an ergonomic assessment of plaintiff's workstation. She recommended that in addition to a new chair, plaintiff should raise her computer monitor and add an armrest that attached to her work surface, a copyholder, footrest and a telephone headset. Whitehorse also recommended that plaintiff close the window blinds when necessary to alleviate the glare on her computer screen and that part of her work surface be raised so that she could work while standing. The next day, plaintiff sent Forlenza an email message thanking her for responding promptly to her request for accommodations for her disabilities. By June 28, 2003, with the exception of raising part of her work space that was scheduled for July 29, 2002, the recommended accommodations had been completed.

Despite the efforts of defendant Traska to monitor plaintiff's progress closely, provide her with direct feedback on a regular basis and schedule check-in meetings, plaintiff's performance did not improve. On August 9, 2002, after evaluating plaintiff's performance over the extended three-month probationary period, defendant Traska wrote plaintiff to inform her that she had failed her probation and was being

terminated from her program and planning analyst–4 position. Traska cited five particular areas in which plaintiff's performance fell short: 1) failure to meet assigned deadlines; 2) failure to follow up and communicate effectively with local officials; 3) lack of initiative in performing job duties; 4) not following directions and providing deliverables as requested; and 5) not taking personal responsibility for completing work assignments effectively. The letter detailed clear examples and documentation to support the action and was signed by defendant Traska. Defendants Forlenza and Traska decided to terminate plaintiff with agreement from Bureau Director Rod Clark, Division Administrator Ruben Anthony, Bureau Director Susan Christopher, Affirmative Action Officer Demetri Fisher, Attorney Allyn Lepeska, Personnel Specialist Gary Kastorff and Chief Officer of Administrative Services Amy Wazny. Plaintiff filed a discrimination complaint with the Wisconsin State Personnel Commission on February 5, 2003, alleging race and disability discrimination as well as retaliatory discharge.

## OPINION

Plaintiff concedes that she does not have a claim under Title VII for a hostile work environment. Plt.'s Br., dkt. # 19, at 2. Therefore, I will address the remaining claims that 1) defendant Wisconsin Department of Transportation discriminated against her because of her race and ethnicity in violation of Title VII; 2) defendant Wisconsin Department of Transportation created a hostile work environment and discriminated against her because of her disabilities in violation of the Rehabilitation Act; 3) defendants Marcia Traska and Mary Forlenza discriminated against her because of her race and ethnicity in violation of the equal protection clause and 42 U.S.C. § 1981; 4) defendants Traska and Forlenza retaliated against her in violation of the First Amendment and Title VII;

and 5) defendants Traska and Forlenza deprived her of liberty without due process of law in violation of the Fourteenth Amendment.

### A. Race Discrimination

Plaintiff brings her race discrimination claim under the equal protection clause of the Fourteenth Amendment, via 42 U.S.C. § 1983, 42 U.S.C. § 1981 and Title VII of the Civil Rights of 1964. (In addition, plaintiff appears to bring a claim for ethnicity discrimination but does not propose separate facts regarding that claim. Therefore, I will combine her race and ethnicity claims into a single claim for race discrimination.) The Fourteenth Amendment prohibits states from denying any person the equal protection of the laws. Section 1981 prohibits discrimination on the basis of race in the making and enforcing of contracts, including employment contracts. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Employment contracts include at-will employees for purposes of § 1981 claims. *Walker v. Abbott Laboratories*, 340 F.3d 471, 478 (7th Cir. 2003). Title VII prohibits employers from discriminating against employees or applicants on the basis of race, sex, religion or national origin. Each of these laws applies to discrimination by state employers. *Alexander v. Wisconsin Dept. of Health and Family Services*, 263 F.3d 673, 681–82 (7th Cir.2001).

The standard for imposing liability on a defendant is essentially the same with respect to § § 1981, 1983 and Title VII. *Williams v. Seniff*, 342 F.3d 774 (7th Cir. 2003) ("Our cases make clear that the same standards for proving intentional discrimination apply to Title VII and § 1983 equal protection."); *Patton v. Indianapolis Public School Board*, 276 F.3d 334, 338 (7th Cir.2002) ("Discrimination claims under both Title VII and § 1981 are analyzed

in the same manner."); *Malacara v. City of Madison,* 224 F.3d 727, 729 (7th Cir. 2000) (using same framework to analyze claims under § 1981, § 1983 and Title VII).

However, which defendants plaintiff may sue differs depending on whether she is suing under Title VII and §§ 1981 or 1983. As plaintiff's former employer, the Wisconsin Department of Transportation rather than defendants Traska and Forlenza is the proper defendant for plaintiff's Title VII claim. 42 U.S.C. § 2000e(b); *Mateu–Anderegg v. School District of Whitefish Bay,* 304 F.3d 618, 623 (7th Cir.2002). Because Congress has validly abrogated state sovereign immunity with respect to Title VII, plaintiff may recover damages against defendant Wisconsin Department of Transportation. *Nanda v. Board of Trustees of the University of Illinois,* 303 F.3d 817, 830–31 (7th Cir.2002). However, plaintiff may not sue state entities for damages under § 1983. *Williams v. Wisconsin,* 336 F.3d 576, 580 (7th Cir.2003) ("a state is not a 'person' subject to a damages action under § 1983"). With respect to her §§ 1981 and 1983 claims, plaintiff may seek damages from defendants Traska and Forlenza in their personal capacity if she can show that they were personally involved in the illegal decision. *Kelly v. Municipal Courts of Marion County, Indiana,* 97 F.3d 902, 908–09 (7th Cir. 1996).

"Under Title VII, it is unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Wyninger v. New Venture Gear, Inc.,* 361 F.3d 965, 978 (7th Cir.2004). A plaintiff may prove employment discrimination under Title VII by demonstrating that "race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 94, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003) (citing 42 U.S.C. § 2000e–2(m)). Similarly, the Supreme Court has held that a defendant may be held liable under § 1983 for violating the Fourteenth Amendment if discriminatory animus was a "motivating factor" in the challenged decision. *Hunter v. Underwood,* 471 U.S. 222, 225, 105 S.Ct. 1916, 85 L.Ed.2d 222 (1985); *Village of Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 270, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

To prove whether race was a motivating factor for any employment practice, a plaintiff may rely on either direct or circumstantial evidence. *Id.* at 99, 123 S.Ct. 2148. Direct evidence essentially "requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti v. BASF Corporation,* 349 F.3d 1055, 1061 (7th Cir.2003). A plaintiff that lacks evidence of such an admission can construct a "convincing mosaic of circumstantial evidence that points directly to a discriminatory reason for the employer's action." *Davis v. Con–Way Transportation Central Express, Inc.,* 368 F.3d 776, 783 (7th Cir.2004). For example, evidence "that a defendant's explanation for an employment practice is 'unworthy of credence' is 'one form of circumstantial evidence that is probative of intentional discrimination.' " *Desert Palace,* 539 U.S. at 100, 123 S.Ct. 2148 (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). A plaintiff may rely on decisionmakers' remarks or behavior that either acknowledges discriminatory intent or more ambiguously supports an inference of discrimination. *Troupe v. May Department Stores Co.,* 20 F.3d 734, 736 (7th

Cir.1994). In addition, a plaintiff may show that similarly situated employees were given more favorable treatment. *Id.* Finally, a plaintiff may show that she was qualified for the job but replaced by someone outside her protected class and that the employer's stated reasons are unworthy of belief. *Id.* Once a plaintiff demonstrates that race, for example, was a motivating factor in an employment practice, the employer may limit its liability by demonstrating that it "would have taken the same action in the absence of the impermissible motivating factor." *Desert Palace,* 539 U.S. at 94–95, 123 S.Ct. 2148.

■ Plaintiff lacks any direct evidence of discrimination. Rather, she hinges her case on circumstantial evidence, arguing that defendants did not terminate Caucasians who held the same position as she did at the Department of Transportation, that defendants replaced her with an unqualified Caucasian woman who is not disabled, and that she was meeting her employer's legitimate expectations. Plt.'s Br., dkt. # 19, at 3–4; Plt.'s PFOF, dkt. # 25, ¶ 10. Plaintiff's evidence of discrimination is weak at best. She fails to propose specific examples of racial bias and instead states merely that defendants Traska and Forlenza harassed her and discriminated against her because of her race and disability. *See, e.g.,* PPFOF, dkt. # 25, ¶¶ 63, 65 and 69. "[C]onclusory allegations of generalized racial bias do not establish discriminatory intent." *Minority Police Officers Ass'n v. South Bend,* 801 F.2d 964, 967 (7th Cir.1986) (plaintiffs unable to point to single instance in which one of officers evaluating them had evidenced racial animosity towards them personally).

· Other than her argument stating that Caucasians were not terminated and Watzke, a Caucasian woman, replaced her after defendants terminated plaintiff, plaintiff fails to show that defendants gave more favorable treatment to others similarly situated to her, who were not in the protected class. It is plaintiff's burden to show comparable circumstances in order to support an inference of discriminatory intent. *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 530 (7th Cir.2003) (noting that plaintiff failed to point to evidence "showing that the other two [white] employees had a comparable set of failings, and thus no inference [could] be drawn" that plaintiff was discriminated against because of her race). Plaintiff proposes no facts to show that Watzke or her other Caucasian co-workers had poor reviews during their probationary period or failed to respond to requests. As far as the record shows, plaintiff's shortcomings were unique to her. For example, it is undisputed that plaintiff never disclosed her notes to defendant Traska, even though Traska asked to see them. Furthermore, plaintiff did not take notes in the manner that defendants Traska and Forlenza preferred. Plaintiff fails to adduce evidence to show that other similarly situated employees outside her protected class did not disclose their notes to their supervisors or take notes in the preferred manner. Among the reasons that defendants terminated plaintiff was that she did not follow directions and provide deliverables as requested and that defendants believed that her work performance declined after her first evaluation. Plaintiff offers no evidence to cast doubt on the honesty of defendants' belief that she was not meeting their legitimate employment expectations.

Plaintiff cites her own affidavit and the affidavits of her co-workers to attest to her work performance. *See, e.g.,* PPFOF, dkt. # 25, ¶¶ 37, 49, 53 and 59. "However, it is the perception of the decision-maker, not the employee, that is relevant." *Adreani v. First Colonial Bankshares Corp.,* 154 F.3d 389, 398 (7th Cir.1998) (employee's

own perceptions of his performance insufficient to create genuine issue of material fact that employer did not honestly believe its proffered reasons for termination). Neither plaintiff nor her co-workers explained why they would know how defendants perceived plaintiff's work performance. It is undisputed that defendant Traska cited five particular areas that caused plaintiff's termination to occur: 1) failure to meet assigned deadlines; 2) failure to follow up and effectively communicate with local officials; 3) lack of initiative in performing job duties; 4) not following directions and providing deliverables as requested; and 5) not taking personal responsibility for effectively completing work assignments. Plaintiff offers no evidence to show that defendants believed that she was meeting these legitimate employment expectations and instead had an ulterior motive in firing her. Plaintiff's self-serving affidavit and the opinions of her co-workers do not call into question the honesty of defendants' belief that her work performance declined after her first evaluation. In addition, when defendants Forlenza and Traska decided to terminate plaintiff, they had the support of seven other administrators. The approval of these administrators suggests that the reasons provided by defendants Traska and Forlenza were well-founded.

To the extent that plaintiff relies on her first evaluation, which was satisfactory, as evidence that she was meeting her employer's legitimate expectations, this cannot save her case. "[E]arlier evaluations cannot, by themselves, demonstrate the adequacy of performance at the crucial time when the employment action is taken." *Moser v. Indiana Dept. Of Corrections*, 406 F.3d 895, 900, 2005 WL 1083787, at *4 (7th Cir.2005).

Finally, defendants Traska and Forlenza have submitted their sworn testimony that they did not consider plaintiff's gender, race, national origin or her disabilities when making any decisions related to her employment and that they would have taken the same actions regardless of her race, national origin, disabilities and regardless of any alleged discriminatory or retaliatory animus. Plaintiff attempts to dispute these assertions by offering her own affidavit and affidavits of her co-workers, averring that defendants treated plaintiff "rudely" and "unfairly" and that she is of African–American and Hispanic descent. Plt.'s Resp. to Dfts.' PFOF, dkt. # 24, ¶ 49. Plaintiff fails to provide specific examples of rude or unfair treatment. See Fed. R.Civ.P. 56(e) (party opposing summary judgment must submit evidence setting forth "specific facts" to support claim). Even if plaintiff had provided one or two examples of rude treatment by defendants, it is unlikely that would have been enough to survive summary judgment. *See, e.g., Massey v. Blue Cross–Blue Shield of Illinois*, 226 F.3d 922, 926 (7th Cir.2000) (one rude comment from supervisor does not amount to evidence of racial discrimination). As noted earlier, conclusory allegations of generalized racial bias are insufficient to establish discriminatory intent. *Minority Police Officers Ass'n*, 801 F.2d at 967.

Summary judgment is the "put up or shut up" moment in a lawsuit. *See, e.g., Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 901 (7th Cir.2003). Because plaintiff offers only conclusory allegations of racial discrimination, no reasonable jury could infer that plaintiff's race was a motivating factor in defendants' decision to terminate her. I will grant defendants' motion for summary judgment as it relates to plaintiff's race discrimination claims under Title VII, § § 1981 and 1983.

### B. *Disability Discrimination*

Plaintiff argues that defendants harassed and terminated her because of her

disability in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). This section provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 7(20) [of this title], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ...." In determining whether this section has been violated in an employment discrimination action, courts are required to follow the standards applied under Title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101–12213). 29 U.S.C. § 794(d). Section 505(a)(2) of the Act, 29 U.S.C. § 794a(a)(2), provides an enforcement mechanism that the Supreme Court has interpreted as granting an implied private cause of action. *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 72–73, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

To establish a prima facie case of discrimination on the basis of disability, a plaintiff must establish that (1) she has a disability within the meaning of the Rehabilitation Act of 1973; (2) she is otherwise qualified for the position sought; and (3) she has been subjected to discrimination solely because of her disability. *Byrne v. Board of Education, School of West Allis–West Milwaukee*, 979 F.2d 560, 563 (7th Cir.1992).

In this case, plaintiff has not advanced arguments to support her generalized contention that defendants discriminated against her by harassing her and terminating her because of her disability. She merely states that the "evidence is particularly strong on this claim because of [the] fact that Defendants used Plaintiff's disability as the prime vehicle for harassing her before they fired her." Plt.'s Br., dkt. #19, at 6. In fact, the undisputed evidence

seems to suggest otherwise; defendants accommodated her disability and plaintiff thanked Forlenza for doing so. Without specific examples of discrimination or harassment based on plaintiff's disability, I need not address this claim. "Arguments that are not developed in any meaningful way are waived." *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999); *see also Finance Investment Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 528 (7th Cir.1998); *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 593 (7th Cir.1992) ("[plaintiffs] cannot leave it to this court to scour the record in search of factual or legal support for this claim"); *Freeman United Coal Mining Co. v. Office of Workers' Compensation Programs, Benefits Review Board*, 957 F.2d 302, 305 (7th Cir.1992) (court has "no obligation to consider an issue that is merely raised, but not developed, in a party's brief"). Accordingly, I will grant defendant's motion for summary judgment as to plaintiff's Rehabilitation Act claims.

## C. *Title VII and First Amendment Retaliation*

■ Plaintiff argues that defendants terminated her in retaliation for her complaints about race and disability discrimination at the Wisconsin Department of Transportation. Defendants argue that plaintiff did not file a timely administrative complaint about the retaliatory charge. In the alternative, defendants argue that plaintiff's complaints about race and disability discrimination did not play a part in their decision to terminate her.

Before suing in federal court, a plaintiff alleging a Title VII violation must file a claim with the Equal Employment Opportunity Commission. See 42 U.S.C. § 2000e–5. Under § 704 of Title VII, the proper limitations period is 180 days from

the alleged retaliatory termination of her employment. Wisconsin is one of many states that have entered into a work sharing agreement with the EEOC in which both the state and federal agencies treat a complaint filed with one agency as cross-filed with the other and the state agency waives its right to exclusive jurisdiction over the initial processing of a complaint. Under 29 C.F.R. § 1601.74(a), n. 12, filing with the Wisconsin Personnel Commission extends the time for filing all charges covering employment practices of the state of Wisconsin to 300 days, except those charges alleging retaliation under § 704 of Title VII, in which case the limitations period is 180 days from the alleged retaliatory termination of employment. Because defendants terminated plaintiff on August 9, 2002, the limitations period expired on February 5, 2003, which is the date that plaintiff filed her administrative complaint alleging discrimination and retaliation with the Wisconsin Personnel Commission. Therefore, plaintiff filed a timely administrative complaint about the retaliatory charge and may proceed with her retaliation claims under both Title VII and the First Amendment.

Defendants do not deny that plaintiff's complaints to Traska and Forlenza were protected activity or that her termination was an adverse employment action under Title VII. Dfts.' Br., dkt. # 7, at 10–11. Rather, their dispute focuses on causation: whether plaintiff's complaints about race and disability discrimination caused her termination. In *Thomas v. Ragland,* 324 F.Supp.2d 950, 974 (W.D.Wis.2004), I noted that in *Spiegla v. Hull,* 371 F.3d 928, 943 n. 10 (7th Cir.2004), the Court of Appeals for the Seventh Circuit "concluded that the causation analysis is the same for retaliation cases brought under Title VII and the First Amendment." To show causation in Title VII retaliation cases, a plaintiff must show that "the protected conduct was a substantial or motivating

factor in the decision." *Thomas,* 324 F.Supp.2d at 975. If a plaintiff can make this showing, then the burden of persuasion shifts to the defendant to show that it would have made the same decision without regard to the plaintiff's protected conduct. *Id.* at 973. "[E]ven if the employer proves that it would have taken the same action in the absence of the impermissible factor, the plaintiff may still obtain declaratory relief, some forms of injunctive relief and attorney fees." *Id.* at 974; 42 U.S.C. § 2000e–5(g)(2)(B).

Rather than developing an argument regarding causation, plaintiff addresses the question whether her complaints to Traska and Forlenza were protected activities. Plt.'s Br., dkt. # 19, at 8–10. As with her race discrimination claim, plaintiff fails to adduce any evidence to undermine defendants' stated reason for terminating her, which was a decline in her work performance. "Without some shred of affirmative evidence to call into question [defendant]'s credibility, [plaintiff] must lose." *Cichon v. Exelon Generation Co., LLC,* 401 F.3d 803, 815 (7th Cir.2005) (impossible for plaintiff to meet burden of proof and demonstrate retaliatory conduct by relying on hope that jury will not trust credibility of defendant's witnesses). Because plaintiff makes no argument linking the alleged complaints to Traska and Forlenza and her termination on August 9, 2002, I will grant defendants' motion for summary judgment as to plaintiff's retaliation claims.

### D. *Due Process*

Plaintiff argues that by terminating her, defendants deprived her of a liberty interest because defendants' actions stigmatized her and have foreclosed her from finding alternative state employment. For support, plaintiff cites *Johnson v. Martin,* 943 F.2d 15, 16 (7th Cir.1991), which states that "[i]n order to state a claim for deprivation of a liberty interest in one's post-

employment reputation, a plaintiff is required to show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of the public disclosure." First, plaintiff fails to offer any argument about how defendants stigmatized her. However, even if I assume that defendants' termination of plaintiff stigmatized her, defendants point out, correctly, that plaintiff fails to adduce any evidence showing that defendants publicized stigmatizing information or that the public information prevented her from finding alternative state employment. "A deprivation of liberty is not implicated when an at-will public employee is discharged and 'there is no public disclosure of the reasons for the discharge.'" *Johnson*, 943 F.2d at 17. Because plaintiff has not shown that defendants' act of termination stigmatized her in any way, I will grant defendants' motion for summary judgment as to plaintiff's due process claim.

## ORDER

IT IS ORDERED that

1) The motion for summary judgment of defendants Wisconsin Department of Transportation, Marcia L. Traska and Mary P. Forlenza regarding plaintiff Pamela J. Burks's claim that defendant Wisconsin Department of Transportation discriminated against her because of her race and ethnicity in violation of Title VII is GRANTED;

2) Defendants' motion for summary judgment is GRANTED as to plaintiff's claim that defendants created a hostile work environment and discriminated against her because of her disabilities in violation of the Rehabilitation Act;

3) Defendants' motion for summary judgment is GRANTED as to plaintiff's claim that defendants discriminated against her because of her race and ethnicity in violation of the equal protection clause and 42 U.S.C. § 1981;

4) Defendants' motion for summary judgment is GRANTED as to plaintiff's claim that defendants retaliated against her in violation of the First Amendment and Title VII;

5) Defendants' motion for summary judgment is GRANTED as to plaintiff's claim that defendants deprived her of liberty without due process of law in violation of the Fourteenth Amendment of the Constitution; and

6) The clerk of court is ordered to enter judgment in favor of defendants and close this case.