Dwayne L. WALKER, Plaintiff,

v.

Howard PETERS, Salvador Godinez, Richard Gramley, Harry Shuman, Anthony Ramos, Arthur Brewer, Andrew Tildon, George Durian, Christine Blue, Jerome Springborn, James Schomig, Francis Melvin, Ronald Shansky, Dr. Patel, Dr. Vade, Officer Miller, Officer McBurnie, Jeanna Hammond Deiterle, Robert Montgomery, Andre White, Ruth Finney, and Louis O. Lowery, in Their Individual and Official capacities, Defendants.

No. 93 C 5831.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 30, 1997.

Dwayne Walker, Dixon, IL, pro se.

Ralph Edward Wilhoite, Jr., Frederick Martin Lerner, Lerner & Wilhoite, Chicago, IL, for Plaintiff.

Colleen McCloskey von Ohlen, Illinois Atty. Gen. Office, Chicago, IL, Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Defendants George Kurian, Salvador Godinez, Jerome Springborn, James Schomig.

Susan Takata O'Leary, Illinois Dept. of Corrections, Chicago, IL, for Anthony Ramos.

### *MEMORANDUM AND ORDER*

MORAN, Senior District Judge.

Plaintiff Dwayne L. Walker is a resident of the Illinois Department of Corrections ("IDOC") who brings this two-count action pursuant to 42 U.S.C. §§ 1983 and 1988.

Defendants are twenty-two employees or former employees of IDOC and include Howard Peters, Salvador Godinez, Richard Gramley, Harry Shuman, Anthony Ramos, Arthur Brewer, Andrew Tildon, George Kurian, Christine Blue, Jerome Springborn, James Schomig, Francis Melvin, Ronald Shansky, Dr. Patel, Dr. Vade, Officer Miller, Officer McBurnie, Jeanna Hammond Deiterle, Robert Montgomery, Andre White, Ruth Finney and Louis O. Lowery.[1] On October 21, 1994, defendants Blue, Miller, McBurnie, Montgomery, White and Finney were dismissed without prejudice. In the present motion the remaining defendants, move to dismiss Count I and II of plaintiff's complaint.

In Count I plaintiff alleges that all of the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to take the steps necessary to determine that he was HIV-positive, by failing to inform him that he was HIV-positive and by failing to treat the disease prior to December 1993. In Count II plaintiff alleges that all defendants violated his Eighth Amendment rights by failing to treat

---

**1.** For simplicity, each defendant will hereinafter be referred to only by his or her last name.

his medical needs, particularly those related to his hemophilia, while incarcerated.

We find that plaintiff has failed to meet the minimal factual burden needed to make out a case that any of the actions listed above constitute a violation of the Eighth Amendment of the United States Constitution. Accordingly, for the reasons cited below, we enter judgment against plaintiff and for all defendants.

## BACKGROUND

Plaintiff Dwayne Walker, inmate # N–21900, is currently in the custody of IDOC at the Dixon Correctional Center ("Dixon"). During his incarceration Walker has also resided at both Stateville and Pontiac Correctional Centers ("Stateville" and "Pontiac"). Walker has been an inmate since 1984, with his initial conviction being on charges of armed violence in 1984. He suffers from hemophilia and uses a wheelchair, although during the period of time relevant to this lawsuit the defendants assert that such use is more a matter of choice than of medical necessity. Plaintiff's medical records also indicate that for some time his treating physicians have thought that he was probably HIV-positive and might have AIDS due to the fact that he had received a hemophilia medication known as Factor VIII during the 1980s, when the medicine ran the risk of being HIV-infected. However, his HIV status was never conclusively determined because plaintiff refused to take an HIV test. Consequently, he was not placed on HIV medication (AZT) until late in 1993.

Defendants are various former and current employees of IDOC, including both medical and non-medical personnel at Stateville and Pontiac, who defendant alleges have participated in violating his constitutional rights.[2] Specifically, plaintiff believes that these de-fendants failed to take the medically necessary steps to determine whether he was HIV-positive (*i.e.*, to administer an HIV test against plaintiff's will, as he refused to voluntarily take the test), failed to make a timely diagnosis of any HIV or AIDS condition, failed to initiate timely HIV treatment and, when treatment was administered, failed to treat appropriately. Plaintiff also claims that these defendants failed to appropriately treat his hemophilia by failing to provide Factor VIII (a hemophilia medication), failing to advise non-medical staff of the pain inherent in this condition, and failing to adequately manage plaintiff's pain.

## ANALYSIS

### A. Standard of Proof for Summary Judgment

A motion for summary judgment may be granted where the pleadings and evidence present no genuine issues of fact and the movant is consequently entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Renovitch v. Kaufman*, 905 F.2d 1040, 1044 (7th Cir.1990). The movant must point to those portions of the record that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552. The reviewing court shall draw all reasonable inferences in favor of the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). When it is clear that the plaintiff cannot carry her bur-

---

**2.** Peters is the current director of IDOC. Godinez is the current warden of Stateville Correctional Center. Gramley is the warden of Pontiac Correctional Center. Shuman is the current chief medical officer for IDOC. Shansky was the chief medical officer prior to Shuman. Brewer is the medical director at Stateville. Tildon and Kurian are doctors employed by or acting on behalf of IDOC. Blue is an IDOC employee who works in Stateville's health care unit. Ramos is a cor-rectional officer employed by IDOC at Stateville. Schomig is an assistant warden at Stateville. Springborn is an assistant warden at Stateville. Melvin is a correctional officer at Pontiac. Patel and Vade are physicians who worked for IDOC at the Pontiac facility. Deiterle and Finney are nurses who worked for IDOC at Pontiac. Lowery is an assistant warden at Pontiac. Miller, McBurnie, Montgomery, and White are correctional officers at the Pontiac facility.

den of persuasion at trial on one or more elements, summary judgment is appropriate for the defendant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

## B. Plaintiff's Constitutional Claims

Plaintiff Walker has brought this action under §§ 1983 and 1988 of Title 42 of the United States Code. Section 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1988 provides for the use of state law where the rights or remedies provided by federal law are inapplicable or insufficient, and was designed to encourage civil rights actions by compensating the prevailing party for its attorney's fees. 42 U.S.C. § 1988. It is well established that in order to recover damages under these federal civil rights statutes plaintiff must prove (1) that defendants acted under color of state law; (2) that their actions resulted in deprivation of plaintiff's constitutional rights; and (3) that defendants' acts proximately caused the constitutional violation. 42 U.S.C. § 1983; *Crowder v. Lash*, 687 F.2d 996, 1002 (7th Cir.1982). The Supreme Court has interpreted the proximate cause requirement to mean that each individual defendant must be found personally responsible for the acts constituting the constitutional violation before liability will be imposed on him. *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir.1981). The Supreme Court has also directly addressed the relationship between the Eighth Amendment, § 1983, and inmate medical care.

### 1. The Medical Treatment that Plaintiff Received Did not Constitute Cruel and Unusual Punishment Under the Eighth Amendment Purposes

In Counts I and 11 of this action plaintiff essentially alleges that defendants violated plaintiff's constitutional right to be free from "cruel and unusual punishment" by failing to diagnose him as HIV-infected and by failing to treat him for HIV infection and hemophilia. Defendants claim they are entitled to summary judgment because plaintiff will not be able to prove facts sufficient to prove prongs (2) (the constitutional violation requirement) and (3) (the proximate cause requirement) of the standard for § 1983 cases described above. Specifically, defendants argue, that Mr. Walker's medical treatment did not violate the Eighth Amendment and, even if it did, the named defendants were not sufficiently personally responsible for plaintiff's treatment for § 1983 purposes.

We find that even accepting the plaintiff's version of the facts (the parties do not dispute the material facts of this case) defendant's behavior simply does not amount to a violation of the Constitution's prohibition against cruel and unusual punishment. Moreover, even if the behavior complained of did constitute an Eighth Amendment violation, the majority of the defendants were not involved with plaintiff's medical care and, as a result, could not be held liable under § 1983.

Plaintiff's complaint charges that defendants violated his constitutional rights by refusing to give him AZT or other HIV medication. Although HIV medications are generally available to HIV-infected prisoners, for some period it was required that an inmate take an HIV test before AZT was prescribed it is this testing requirement that plaintiff apparently feels constituted a violation of his constitutional rights (Pl.Mem. in Opp. to Def.Mot. For Sum.Jdgmt., p. 8). Plaintiff alleges that the prison medical personnel, who suspected or even were quite sure that Walker was HIV-positive, should have given him AZT and other treatments, without requiring the determination that he actually had the disease. Alternatively, plaintiff argues that if the test was required, defendants should have administered the test against plaintiff's will.

It is well established that the government has an obligation to provide medical care to

prisoners, and that the failure to do so can in some cases amount to "cruel and unusual punishment," in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 103–04, 97 S.Ct. 285, 290–91, 50 L.Ed.2d 251 (1976). In the context of inmate medical care, the Supreme Court has held that prison personnel (both medical and non-medical) cannot be held liable for failing to provide medical care to a patient unless the plaintiff can point to specific facts showing the defendant was "deliberately indifferent" to the inmate's serious medical needs. *Estelle* at 105, 97 S.Ct. at 292. Specifically, the Supreme Court has observed:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle,* at 106–07, 97 S.Ct. at 292–93; *see also Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (holding that prison officials will not be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health). The Court further observed that the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of medical judgment," and the decision to not order certain measures generally does not represent cruel and unusual punishment. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 292. "At most it is medical malpractice," and the proper forum would be a tort action in state court. *Estelle,* 429 U.S. at 107, 97 S.Ct. at 292.

In this case, even accepting the plaintiff's version of events, we simply cannot see how defendants' behavior could be said to constitute "deliberate indifference" to plaintiff's health or the "unnecessary and wanton infliction of pain," so as to be "repugnant to the consciousness of mankind." The prison system, for some period at least, required that before AZT and other AIDS medications were administered to HIV patients, it had to be determined that they were actually HIV-positive. This was done via HIV testing, and the determination that the inmate had a congruence of certain other lifestyle characteristics and positive symptoms of the disease. *See IDOC Management of HIV Infection During Reception and Classification Guidelines,* attached to Plaintiff's Memo. in Opp. as Exhibit 13. Plaintiff does not deny that at any point he could have received an HIV test and, if found positive, would have begun treatment for the disease. Rather, he contends that he was entitled to receive the costly medication without confirmation that he suffered from HIV. We find that requiring an HIV test before administering HIV medication does not constitute "deliberate indifference" to an inmate's health and, consequently, plaintiff's § 1983 claim fails as a matter of law.

Lacking any expert of his own, plaintiff is forced to read into the testimony of the defendant doctors a conclusion that a failure to provide AZT to an HIV-indicated prisoner who has refused testing constitutes deliberate indifference. That testimony does not support such a conclusion. What is evident is a difference of medical opinion. Some, recognizing that AZT is a powerful drug with strong potential side effects, do not believe administering AZT is appropriate unless testing has confirmed an HIV-positive diagnosis. Others disagree, believing that AZT treatment is appropriate if the available information strongly indicates an HIV-positive condition. Action based on either medical judgment is far from rising to the level of a constitutional violation.

■ Plaintiff further contends that, if the testing requirement is constitutional, it should have been given to plaintiff against his will. Moreover, plaintiff contends that

such action is required by the Illinois AIDS Confidentiality Act, which provides in part that "written informed consent, information and counseling are not required for the performance of an HIV test." 410 ILCS 305/8. Plaintiff, however, ignores the rest of the above sentence, which continues: "provided that the subject of the test has otherwise provided his or her consent to [the] physician for medical treatment." *Id.* Nowhere does plaintiff assert that he had given such consent. Indeed, the very reason plaintiff points out this section of the code is to argue that the prison personnel should have acted *without* his consent. Moreover, the record is replete with evidence that plaintiff was ardently resisting the medical efforts and advice of his doctors on a regular basis and was adamantly opposed to taking an HIV test. Given these circumstances, we do not think that the AIDS Confidentiality Act entitled defendants to act over plaintiff's express will.

■ The complaint also alleges that the defendants failed to treat plaintiff's hemophilia. Again, the record indicates a difference in medical opinion. Some doctors believe that Factor VIII should generally be administered on demand because the patient can detect the onset of a bleed. We say "generally" because of a complication here. Plaintiff would from time to time demand and get Factor VIII, and then refuse to take it, resulting in a waste of an expensive drug. Other doctors believe that there should be some objective manifestation of a bleed before the drug is administered. Apparently, as well, some doctors believe that the drug should be administered prophylactically on a set schedule. No reasonable trier of fact could, on the basis of the present record, conclude that an insistence upon a clinical observation constituted deliberate indifference.

■ The above reasoning leads us to conclude that Counts I and II must be dismissed. Under the standards laid out by the Supreme Court in *Estelle,* it is clear that

plaintiff will not be able to demonstrate that defendants were deliberately indifferent to his HIV- or hemophilia-related medical needs. Moreover, the essential charge of both counts is that defendants failed to diagnose and treat these illnesses. Such claims are typical medical malpractice claims and, under *Estelle,* are more appropriately brought in state court.[3]

### 2. The Personal Responsibility Requirement

■ In their briefs, plaintiffs and defendants both argue at length about whether or not defendants had the requisite personal involvement to be held liable under § 1983. Because we have ruled that summary judgment is appropriate on different grounds, we are not required to determine this issue. Nonetheless, we do observe that the law clearly requires plaintiff to prove each defendant was responsible in some way for the alleged wrong in order to establish the requirement that anyone held liable was personally involved in the wrongs against the defendant. *Kelly v. Municipal Courts of Marion County, Indiana,* 97 F.3d 902, 909 (7th Cir.1996). This requires plaintiff to show more than the simple fact that defendants exercised supervisory powers over persons who actively participated in the constitutional deprivation. *Id.* "An official satisfies the personal responsibility requirement of section 1983 if she acts with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." *Crowder v. Lash,* 687 F.2d 996 (citing *Beard v. Mitchell,* 604 F.2d 485, 498–99 (7th Cir.1979); *Adams v. Pate,* 445 F.2d 105, 107 (7th Cir. 1971); *Wood v. Worachek,* 618 F.2d 1225, 1233 (7th Cir.1980); *Stringer v. Rowe,* 616 F.2d 993, 1000–01 (7th Cir.1980); *Spence v. Staras,* 507 F.2d 554, 557 (7th Cir.1974)); *see also Hamilton v. Scott,* N.D.Ill.1991, 762

---

**3.** It might be contended that the failure to treat or diagnose a patient with AIDS is qualitatively different from the failure to treat a patient with back pain (such as the patient in *Estelle*), in that where an AIDS patient is concerned a lack of treatment necessarily contemplates the shorten-

ing of the patient's life. We emphasize that we do not hold that there is no qualitative difference between HIV and certain other illnesses. We acknowledge that a complete refusal to treat HIV might well rise beyond the level of mere medical malpractice.

F.Supp. 794, aff'd. 976 F.2d 341 (7th Cir. 1992) (holding that an inmate's complaint was not sufficient to state a claim against the director or warden of the prison absent an allegation that they were directly involved in the alleged misconduct or recklessly indifferent to the constitutional violations of which they had some knowledge).

Plaintiff has acknowledged in deposition that in many instances, particularly where the nonmedical defendants are concerned, he had virtually no contact with the defendants who allegedly wronged him. In the few instances where a defendant had been involved in plaintiff's medical care, it was often on a matter entirely separate from his HIV and hemophilia treatment. Given this state of facts it seems clear that plaintiff would not be able to prove the personal responsibility element for most of the defendants in this case.

## CONCLUSION

For the foregoing reasons, we grant defendants' motion for summary judgment on Counts I and II.